UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY LEE WOODROFFE,

     Plaintiff,

v.                              Case No. 8:18-cv-3023-T-23CPT

ANN COFFIN, et al.,

     Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This matter is before me on referral for consideration of *pro se* Plaintiff Gary Lee Woodroffe's *Application to Proceed in District Court Without Prepaying Fees or Costs* (Application), which I construe as a motion to proceed *in forma pauperis*. (Doc. 12). Also before me is Woodroffe's *Amended Complaint for Declaratory Relief and Damages* (Amended Complaint) against Defendants Florida Department of Revenue (DOR), Florida Department of Law Enforcement (FDLE), five current and former state court judges, Federal National Mortgage Association (Fannie Mae), certain state and federal officials, and Woodroffe's ex-wife, Lizabeth Lynn Lotsey. (Doc. 20).

This action marks yet another attempt by Woodroffe to have the Court entertain claims stemming principally from a state court domestic relations matter involving Woodroffe, Lotsey, and the DOR, as well as a state court foreclosure case

directed at Woodroffe's home in Sarasota, Florida. *Id.* These proceedings have been the subject of multiple lawsuits Woodroffe has attempted to remove to or filed in this District, most of which have been dismissed or remanded to state court. *See, e.g., Dep't of Revenue v. Woodroffe*, 2019 WL 1358838 (M.D. Fla. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 1359016 (Mar. 5, 2019) (rejecting Woodroffe's attempt to remove state domestic relations case involving Lotsey); *Woodroffe v. Ankoh*, 2016 WL 6647794 (M.D. Fla. Nov. 10, 2016) (declining to accept removal of state court contempt proceeding against Woodroffe that emanated from his domestic relations case with Lotsey); *Woodroffe v. State of Fla.*, 2016 WL 375067 (M.D. Fla. Jan. 29, 2016) (denying Woodroffe's attempt to bring his domestic relations and foreclosure cases before the Court by way of 189-page removal notice). Woodroffe's ninety-page Amended Complaint, which purports to assert eight counts and includes thirty-five pages of exhibits (Doc. 20), generally concerns the same underlying conduct and deserves a similar fate.

I.

Although meandering and difficult to discern, the thrust of Woodroffe's Amended Complaint is that the Defendants violated various statutory and constitutional provisions[1] in connection with Lotsey's alleged kidnapping of their infant child two decades ago in California, her relocation to Florida with the child

---

[1] These provisions include 42 U.S.C. §§ 666, 1983, 1985; the Parental Kidnapping Prevention Act; the American Disabilities Act; the Rehabilitation Act; the Uniform Child Custody Jurisdiction and Enforcement Act; and various amendments to the United States Constitution. (Doc. 20 at 5-9).

soon thereafter, and the subsequent imposition and enforcement of child custody and support obligations against Woodroffe in Florida's Twelfth Judicial Circuit Court. *Id.* at 8-50.  He claims that Lotsey, the DOR, the Social Security Administration (SSA), and the state court judges involved in his child custody and foreclosure proceedings engaged in tortious conduct and violated his constitutional rights. *Id.* at 8-46, 48-49. As for Fannie Mae and the FDLE, Woodroffe appears to assert that the former committed malfeasance in connection with the foreclosure proceeding, *id.* at 34-36, 42, while the latter defamed him and otherwise infringed upon his rights through its enforcement of the state's sex offender registration laws, *id.* at 29-34, 62-68.  According to Woodroffe, the Defendants' unlawful conduct led to the termination of his employment, *id.* at 19-20; the unlawful garnishment of his Social Security income, *id.* at 8-9; the infringement of his parental rights, *id.* at 48-49; a period of imprisonment, *id.* at 19-20; the loss of his home, *id.* at 8-9; the suspension of his driver's license, *id.* at 19-20; and "defamatory" characterizations of him in the "public record" as a "sexual predator"[2] and "vexatious litigant," *id.* at 9, 29-31.  To redress his claimed injuries, Woodroffe seeks various forms of injunctive and declaratory relief, as well as compensatory and punitive damages totaling more than $200 million. *Id.* at 50-83.

## II.

Pursuant to 28 U.S.C. § 1915, a district court "may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or

---

[2] Woodroffe pleaded guilty to a sex offense in the State of Washington in the 1990s and was sentenced to a thirty-four-month term of imprisonment.  *Woodroffe*, 2016 WL 375067, at *1.

criminal, or appeal therein, without prepayment of fees or security therefor" upon a showing of indigency by affidavit.  28 U.S.C. § 1915(a)(1).  The court has "wide discretion" to grant or deny an application to proceed *in forma pauperis*, and, in civil cases for damages, the privilege should be granted "sparingly."  *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306-07 (11th Cir. 2004) (citation omitted).  While such an application "need not show that the litigant is absolutely destitute," it must indicate "that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents."  *Id.* (citing *Adkins v. E.I. Dupont de Nemours & Co.*, 335 U.S. 331, 338-40 (1948) (internal quotation marks omitted)).

When an application to proceed *in forma pauperis* is filed, the district court must also review the case and dismiss the complaint *sua sponte* if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  Dismissal for failure to state a claim in this context is governed by the same standard as dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Bravo v. Loor-Tuarez*, 727 F. App'x 572, 575 (11th Cir. 2018) (citation omitted).[3]  As such, "[t]o avoid dismissal, the 'complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'"  *Gates v.*

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

4

*Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018), *petition for cert. denied*, (Jan. 7, 2019)
(2019 WL 113142) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In evaluating a complaint under this standard, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Jara v. Nunez*, 878 F.3d 1268, 1271-72 (11th Cir. 2018) (citation omitted). The court, however, "afford[s] no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action." *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013) (citations omitted).

Finally, although *pro se* pleadings are to be construed liberally, the courts are not "to serve as *de facto* counsel" for *pro se* litigants, nor are they to "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (citation omitted).

III.

While Woodroffe qualifies as indigent for purposes of section 1915(a)(1), his Amended Complaint is subject to dismissal because it fails to satisfy the threshold pleading requirements under the Federal Rules of Civil Procedure, concerns matters over which the Court does not have jurisdiction or should abstain from addressing, and does not state viable claims.

### A.
#### *Pleading Requirements*

Federal Rule of Civil Procedure 8 establishes "[t]he bare minimum a plaintiff must set forth in the complaint." *Hunter v. Woods*, 2017 WL 6610889, at *1 (M.D. Fla. Nov. 3, 2017). In relevant part, it requires that a complaint contain both "a short and plain statement of the grounds for the court's jurisdiction," as well as "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)-(2). Rule 10 relatedly requires that the complaint "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count." Fed. R. Civ. P. 10(b). Rules 8 and 10 "work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (quotation omitted).

Woodroffe's Amended Complaint does not meet these threshold pleading requirements. Contrary to the dictates of Rules 8 and 10, his voluminous and overwrought complaint is far from "short and plain." (Doc. 20). Most of the counts appear to include multiple purported causes of action, contain extraneous contentions, and repeat factual assertions that lack clarity. Each is also rife with legal conclusions.

By way of example, Count I, captioned "Fourth Amendment Unreasonable Seizure and Interference with Property," begins with allegations that Woodroffe's ex-wife, Lotsey, engaged in adultery in the 1980s, kidnapped and relocated their child from California to Florida, and engaged in various forms of fraud and other improper conduct during their ensuing domestic relations matter in Florida. *Id.* at 14-16. From there, Woodroffe pivots to the DOR and accuses it of flouting legal requirements in connection with his state court child support proceedings. *Id.* at 16-22. This count also includes a series of charges against the state court judges in those proceedings based on orders they entered, along with allegations concerning the foreclosure of his home. *Id.* at 22-24. From these disjointed and rambling contentions, it is unclear which facts support which claim or whether there is a viable federal action buried somewhere within.

The same can be said of Woodroffe's remaining counts. *Id.* at 26-49. As such, his Amended Complaint constitutes an impermissible "shotgun" pleading subject to dismissal. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015) (describing complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" as a common type of improper shotgun pleading subject to dismissal).

Woodroffe's Amended Complaint constitutes an inappropriate shotgun pleading in another respect. With the exception of Lotsey and the DOR, the Amended Complaint largely fails to ascribe specific actions to many of the Defendants. *Weiland*, 792 F.3d at 1323 (identifying complaint as "shotgun pleading" where it asserted

"multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions").  Woodroffe's scattershot references to these Defendants throughout his pleading denies them fair notice of the allegations against them and thus contravenes the rules of civil procedure.  *Paul v. Mayo Clinic*, 2016 WL 11431491, at *3 (M.D. Fla. June 16, 2016) (citations omitted) (noting that the rules of civil procedure generally "require a plaintiff to differentiate allegations among multiple defendants so as to give fair notice to each Defendant of the allegations against it").  It also deprives the Court of adequate information to assess the viability of Woodroffe's claims with respect to these Defendants and impermissibly imposes upon the Court "the cumbersome task of sifting through myriad claims, many of which [may be] foreclosed by [various] defenses."  *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) (internal quotation marks and citation omitted).

## B.
### *Subject Matter Jurisdiction*

Federal subject matter jurisdiction may be predicated on either diversity of the parties or the presence of a federal question.  *Walker v. Sun Trust Bank of Thomasville, Ga.*, 363 F. App'x 11, 15 (11th Cir. 2010) (citing 28 U.S.C. §§ 1331, 1332).  Irrespective of the basis alleged, a complaint "must contain a short plain statement of the grounds for the court's jurisdiction."  Fed. R. Civ. P. 8(a)(1); *see also Travaglio v. American Exp. Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013) ("When a plaintiff files suit in

federal court, [he] must allege facts that, if true, show federal subject matter jurisdiction over [his] case exists.") (citation omitted).

In this case, Woodroffe does not establish that the Court has diversity jurisdiction over his claims. For diversity jurisdiction to attach, there must be complete diversity of citizenship among the parties. 28 U.S.C. § 1332; *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) (citations omitted). This means that no plaintiff may be a citizen of the same state as any defendant at the time the suit is filed. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) (citations omitted). For purposes of this analysis, the citizenship of an individual like Woodroffe is determined by his "domicile," which "requires both residence in a state and 'an intention to remain there indefinitely.'" *Travaglio*, 735 F.3d at 1269 (citation omitted).

Although Woodroffe states he was a California citizen when Lotsey allegedly kidnapped their child, he moved to Florida more than fifteen years ago and identifies himself as a Florida resident. (Doc. 20 at 2, 10, 12). And, while Woodroffe neglects to allege most of the Defendants' citizenship, at least one—the DOR—is a citizen of Florida. *See Moussignac v. Georgia Dep't of Human Res.*, 139 F. App'x 161, 162 (11th Cir. 2005) (identifying Georgia Department of Human Resources, the state agency garnishing plaintiff's wages, as Georgia citizen for diversity purposes). Lotsey, moreover, has been a citizen of Florida since 2000 according to the Amended Complaint. (Doc. 20 at 10).

9

Woodroffe similarly fails to establish federal question jurisdiction over his domestic relations and foreclosure-related claims.  His efforts in this regard amount to little more than a perfunctory recitation of various constitutional provisions, federal statutes, and federal regulations that bear questionable connection to the facts alleged.  Such conclusory assertions, without more, do not state a claim arising under federal law and are therefore insufficient to invoke federal question jurisdiction.  *See, e.g., Allah El v. Avesta Homes, LLC*, 520 F. App'x 806, 809 (11th Cir. 2013) ("Federal question jurisdiction exists only when the [plaintiff's] well-pleaded complaint presents issues of federal law."); *Richardson v. Park Soleil Vacation Owners Ass'n, Inc.*, 2017 WL 6389670, at *3 (M.D. Fla. July 17, 2017) (finding plaintiff's tangential and conclusory references to multiple federal statutes "fall well short of establishing federal question jurisdiction"), *report and recommendation adopted*, 2017 WL 6373924 (M.D. Fla. Dec. 13, 2017).

Moreover, to the extent Woodroffe's state domestic relations and foreclosure cases have concluded with judgments on the merits, the *Rooker-Feldman* doctrine bars the Court's review of those final judgments.  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  The *Rooker-Feldman* doctrine limits a district court's jurisdiction over certain matters related to prior state court litigation, and applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Its reach "extends not only to federal claims actually raised in state court, but also to federal claims 'inextricably intertwined' with the state court's judgment, meaning those that can 'succeed[ ] only to the extent that the state court wrongly decided the issues' before it." *Lawton v. Rosen*, 559 F. App'x 973, 974 (11th Cir. 2014) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)).

The *Rooker-Feldman* doctrine forecloses Woodroffe's efforts to use this action as a mechanism to overturn final state court orders resolving domestic relations and foreclosure-related claims he raised, or had a reasonable opportunity to raise, in that forum. *See Symonette v. Aurora Loan Serv., LLC*, 631 F. App'x 776, 778 (11th Cir. 2015) (affirming dismissal of *pro se* plaintiffs' attack on state court foreclosure judgment based in part on *Rooker-Feldman*); *Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 677 (11th Cir. 2014) ("Insofar as the [plaintiffs] seek to have [a foreclosure] judgment declared null and void by the district court sitting in diversity, such claim is barred by the *Rooker-Feldman* doctrine."); *Lawton*, 559 F. App'x at 974 (upholding dismissal for lack of subject matter jurisdiction under *Rooker-Feldman* where claims "attacked the validity of the child-support proceedings already litigated in state court and the judgments that resulted from those proceedings"); *Gogola v. Zingale*, 141 F. App'x 839, 842 (11th Cir. 2005) (affirming dismissal of complaint as barred by *Rooker-Feldman* because plaintiff's challenge to constitutionality of state's alimony laws was in essence an attempt to reverse state court orders requiring such payments); *Mugarra v. General Attorney Office*, 2011 WL 3629169, at *2 (M.D. Fla. Aug. 1, 2011), *report and recommendation adopted*, 2011 WL 3648637 (M.D. Fla. Aug. 18, 2011) (dismissing with

11

prejudice based in part on *Rooker-Feldman* where plaintiff sought review of final decision of Florida child support hearing officer denying adjustment of support amount and related benefits).

C.

*Abstention Doctrines*

To the extent Woodroffe's domestic relations and foreclosure actions remain ongoing,[4] his claims are subject to dismissal under the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971).  That doctrine "bars federal court intervention in state noncriminal proceedings where the proceedings constitute an ongoing state judicial proceeding, the proceedings implicate important state interests, and there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Adams v. State of Fla.*, 185 F. App'x 816, 816-17 (11th Cir. 2006) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003)).  As best can be discerned from his Amended Complaint, Woodroffe seeks to have the Court engage in such prohibited intervention here.  As a result, *Younger* abstention is warranted.  *See, e.g., Pompey v. Broward Cty.*, 95 F.3d 1543, 1549-51 (11th Cir. 1996) (affirming dismissal of plaintiffs' challenges to constitutionality of procedures employed in state court child support enforcement proceedings and related requests for equitable relief that would have federal judges serve as overseer of such cases); *Norman v. Florida Dep't of Revenue*, 2018 WL 5258581, at *2 (M.D. Fla. Sept. 24, 2018), *report and recommendation adopted*, 2018

---

[4] Woodroffe suggests, for example, that his foreclosure case is on appeal in the Florida state court system.  (Doc. 20 at 40).

WL 5227792 (M.D. Fla. Oct. 22, 2018) (dismissing complaint seeking intervention in ongoing state court proceedings to modify or cancel child support obligations as barred by *Younger*); *Royster v. Florida*, 2007 WL 470608, at *4-5 (N.D. Fla. Feb. 6, 2007) (finding *Younger* abstention appropriate where plaintiff sought to enjoin division of the DOR and its officers from engaging in unlawful conduct during child support enforcement matters).

The "domestic relations exception" to federal jurisdiction provides an additional basis for the Court to decline Woodroffe's invitation to inject itself into his child custody and support matters. This long-standing exception instructs federal courts to abstain from assuming jurisdiction over cases that require them to determine issues of divorce, alimony, or child custody. *Moussignac*, 139 F. App'x at 162 ("The federal judiciary has traditionally abstained from deciding cases concerning domestic relations. As a result, federal courts generally dismiss cases involving divorce and alimony, child custody, visitation rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification.") (citing *Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir. 1988) (per curiam)). Because Woodroffe's domestic relations claims appear to mandate inquiry into aspects of his marriage and separation from Lotsey, as well as their ongoing relationship with their child, the Court should abstain from adjudicating these claims under the domestic-relations exception. *Ingram,* 866 F.2d at 370 (citation omitted) (noting that federal courts should dismiss an action under the domestic relations exception "if hearing the claim would mandate inquiry into the marital or parent-child relationship").

13

### D.
*Claim Splitting*

Woodroffe's Amended Complaint also implicates the doctrines of claim and issue preclusion, as well as the related rule against claim-splitting. *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) ("Claim-splitting has been analyzed as an aspect of res judicata or claim preclusion.") (citations omitted). Because the preclusion doctrines are difficult to apply under the circumstances present in this case, I focus on the rule against claim-splitting.[5] That rule "reflects that a district court, as part of its general power to administer its docket, has the authority to stay or dismiss a suit that is duplicative of another case then pending in federal court." *Zephyr Aviation III, L.L.C. v. Keytech Ltd.*, 2008 WL 759095, at *6 (M.D. Fla. Mar. 20, 2008) (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) and *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *cert. denied*, 552 U.S. 1076 (2007)). The claim-splitting bar requires a plaintiff to "assert all of [his] causes of action arising

---

[5] I note in this regard that, while Woodroffe's allegations appear duplicative of those he previously has attempted to bring before the district court, those prior actions did not end with dismissal on the merits or with prejudice. *See Hughes v. Lott*, 350 F.3d 1157, 1161 (11th Cir. 2003) (finding error in dismissal of complaint on res judicata grounds where dismissal of previous complaint was without prejudice and thus without preclusive effect). Determining whether the issues Woodroffe seeks to litigate in this case have been litigated before is particularly problematic given the pleadings deficiencies in this and the other actions. *See I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir.1986) (issue preclusion requires the identity and actual litigation of issues in the prior suit). Because independent bases for dismissal exist, I find it unnecessary to navigate the thorny preclusion analysis. *See, e.g., Martinez v. Hall*, 2011 WL 6182026, at *3 (M.D. Fla. Dec. 13, 2011) (opting to forgo application of doctrines of claim and issue preclusion to complaint brought with *in forma pauperis* motion where independent issues warranted dismissal).

from a common set of facts in one lawsuit" because "[b]y spreading claims around in multiple lawsuits . . . or before other judges, parties waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases." *Vanover*, 857 F.3d at 841 (internal quotation marks and citation omitted). Where a plaintiff's cases involve "the same parties and their privies" and "arise from the same transaction or series of transactions," the rule against claim-splitting may be violated. *Id.* at 841-842.

Prior to commencing this case, Woodroffe initiated a separate action in November 2018 against several of the defendants named here, including Lotsey, the director of the DOR, and certain judges of the Twelfth Judicial Circuit Court. Although that action was initially dismissed, it was later revived by the Eleventh Circuit and currently pends before another judge in this Division, the Honorable William F. Jung. *Woodroffe v. Coffin*, 8:18-cv-2872-WFJ-JSS (M.D. Fla.). Similar to his allegations in this case, Woodroffe's complaint in the Judge Jung action recounts Lotsey's alleged misdeeds, the DOR's purported violations of child support laws and regulations, and the state court judges' alleged entry of unlawful orders, all of which, according to Woodroffe, have caused him a host of legal harms. *Id.* at (Doc. 1). As here, Woodroffe also seeks in the Judge Jung case to enjoin the FDLE, the garnishment of his income to satisfy his child support obligations, and the foreclosure of his home. *Id.* at 8-9.

Because this and Judge Jung's case arise from a shared nucleus of fact and involve many of the same parties, and because forcing the defendants to separately litigate these actions would be inequitable and waste judicial resources, the policies

underlying the rule against claim-splitting militate against allowing the two overlapping matters to proceed.  Instead, this second-filed case should be dismissed. *See Vanover*, 857 F.3d at 841 (endorsing claim-splitting test that asks, "whether the first suit, assuming it were final, would preclude the second suit" as a logical rule that will allow district courts "to manage their docket and dispense with duplicative litigation") (internal quotation marks and citation omitted).

E.

*Eleventh Amendment Immunity*

Woodroffe's claims against the state court judges and the other state actors, including the DOR, the FDLE, and their officials, also appear barred by the Eleventh Amendment.[6]  That Amendment generally prohibits federal courts from exercising jurisdiction over suits brought against a state by a citizen of either that state or another state.  *Nicholl v. Bd. of Regents of Univ. Sys. of Ga.*, 706 F. App'x 493, 495 (11th Cir. 2017) (citing *Cross v. State of Ala.*, 49 F.3d 1490, 1502 (11th Cir. 1995)).  Immunity from suit under the Eleventh Amendment extends not only to actions in which the state itself is named as a defendant but also to matters in which "arms of the state" are sued.  *Id.* (quoting *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1520 (11th Cir. 1983)). For purposes of the Eleventh Amendment, state officials acting in their official capacities, including members of the judiciary, are deemed arms of the state.  *See*

---

[6] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

*Blough v. Nazaretian*, 2016 WL 9631677, at *5 (M.D. Fla. Oct. 12, 2016) (citing *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)).

Eleventh Amendment immunity admits of few exceptions. These exceptions occur "(1) where a state has expressly waived its immunity; (2) where Congress has abrogated the immunity pursuant to section five of the fourteenth amendment; and (3) where prospective injunctive relief is sought in a suit challenging the constitutionality of a state official's action." *Frieson v. State*, 2006 WL 2927473, at *2 (M.D. Ala. Oct. 11, 2006) (citing *Carr v. City of Florence*, 916 F.2d 1521, 1524 n.2, 1524-25 (11th Cir. 1990)).

Notwithstanding Woodroffe's passing references to 42 U.S.C. § 1983 (through which he ostensibly intends to bring constitutional claims) and Florida Statute § 768.28, Woodroffe has not sufficiently pleaded a basis to show that any of the above exceptions apply here. *Brown v. Florida Dep't of Revenue Office of Child Support Enf't*, 697 F. App'x 692 (11th Cir. 2017) ("Congress has not abrogated Eleventh Amendment immunity in § 1983 cases and the Department [of Revenue] has neither waived its immunity, nor consented to suit in federal court.") (citing *Cross*, 49 F.3d at 1502); Fla. Stat. § 768.28 (outlining Florida's extent of and requirements for waiver of sovereign immunity in certain tort actions).

F.
*Judicial Immunity*

Insofar as Woodroffe seeks damages against the judges named in the Amended Complaint, such relief is additionally barred under the doctrine of judicial immunity.

17

That doctrine affords both state and federal judges "absolute . . . immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (quoting *Bolin v. Story,* 225 F.3d 1234, 1239 (11th Cir. 2000)); *Stevens v. Osuna*, 877 F.3d 1293, 1302 (11th Cir. 2017) (citing *Pierson v. Ray*, 386 U.S. 547 (1967)).   To determine whether a judge is entitled to absolute immunity, courts apply a two-part test: (1) whether the judge performed the challenged acts in his judicial capacity; and (2) whether such actions clearly fell outside the judge's jurisdiction.   *Scott v. Hayes*, 719 F.2d 1562, 1564 (11th Cir. 1983) (citing *Stump v. Sparkman*, 435 U.S. 349 (1978)).

Judicial immunity attaches here.   The conduct of which Woodroffe complains involves actions normally performed by judges, and he does not plead that these state court judges clearly lacked jurisdiction over the legal proceedings at issue.   *See, e.g., Hatcher v. Alabama Dep't of Human Serv., Child Support Enf't Div.*, 747 F. App'x 778, 781-82 (11th Cir. 2018) (upholding decision to deny request to add state court judge who oversaw plaintiff's divorce proceedings as party to complaint because entry of divorce decree is normal judicial function); *Davis v. Self*, 960 F. Supp. 2d 1276, 1305 (N.D. Ala. 2013) (dismissing civil rights claims against judges who issued opinions and entered judgments in plaintiff's state court child custody and support proceedings under the doctrine of judicial immunity), *aff'd*, 547 F. App'x 927, 931-32 (11th Cir. 2013).

To the extent Woodroffe asks this Court to direct the manner in which the state court judges should fulfill their obligations, such a request is essentially one for

equitable relief in the form of mandamus.  *See Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210, 1220 (11th Cir. 2002) (providing that mandamus "is an extreme form of equitable relief . . . 'designed to require an official to perform an act required by law'") (quotation omitted).  Federal courts, however, do not have the authority to issue writs of mandamus instructing state courts and their judicial officers how to perform their duties.  *Johnson v. Georgia*, 661 F. App'x 578, 581 (11th Cir. 2016) (citing *Moye v. Clerk, Dekalb Cty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973)).

## G.
### *Woodroffe's Other Claims are Not Viable*

Woodroffe also contends that the DOR failed to satisfy certain obligations under federal and state law and that such failures constitute fraud.  In particular, it appears he alleges the DOR breached 42 U.S.C. § 666 and other related regulations.[7]  *See, e.g.,* (Doc. 20 at 16-22).  Such claims cannot stand.

Section 666 is part of Title IV-D of the Social Security Act, which sets forth requirements to which a state's child support enforcement program must adhere in order to qualify for the receipt of federal assistance.  *Arrington v. Helms*, 438 F.3d 1336, 1338-39 (11th Cir. 2006).  While it is not clear which requirements Woodroffe believes the DOR has not met, courts considering purported claims under section 666 have concluded that the statute does not create a private right of action.  *Malhan v. Tillerson*, 2018 WL 2427121, at *8 (D.N.J. May 30, 2018) (collecting cases), *appeal docketed* (3rd

---

[7] Insofar as Woodroffe seeks to assert violations of other federal regulations, his allegations are insufficiently pleaded.

Cir. Oct. 25, 2018).  Woodroffe's complaint fails to allege otherwise.  *See McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002) (noting that burden to establish implied private right of action rests with the plaintiff).

Woodroffe also fails to state a cognizable claim of "Stigma-Plus Defamation" against the FDLE based on its role in enforcing the state's sex offender registry laws. (Doc. 20 at 29-34).  To aver such a claim arising from statements made by government officials, "a plaintiff must first allege a common-law defamation claim and then allege a constitutional injury flowing from the defamatory statement."  *Hamze v. Cummings*, 652 F. App'x 876, 881 (11th Cir. 2016) (citing *Rehberg v. Paulk*, 611 F.3d 828, 851-52 (11th Cir. 2010)).  Neither element is adequately pleaded here.  Essentially, it seems Woodroffe is attempting to lodge a challenge to Florida's sex offender statutory scheme relative to its counterpart legislation in Washington.  Such a challenge essentially seeks to overturn the Florida legislature's policy determinations and fails to raise a federal question.

IV.

In light of all of the above, dismissal of Woodroffe's Amended Complaint without leave to amend is appropriate.  Woodroffe already amended his complaint once in this action as a matter of right.  (Docs. 1, 20).  His other attempts to have the district court intercede in his state domestic relations and foreclosure cases have been rejected, and the conduct of which he complains does not appear to give rise to a viable federal claim over which the Court has, or should exercise, jurisdiction.  Moreover, Woodroffe retains the opportunity to amend his complaint in the Judge Jung action.

Accordingly, for the reasons set forth above, I recommend that the Court:

1)      Deny Woodroffe's *Application to Proceed in District Court Without Prepaying Fees or Costs* (Doc. 12);

2)      Dismiss Woodroffe's *Amended Complaint for Declaratory Relief and Damages* (Doc. 20); and

3)      Direct the Clerk to terminate any pending motions and close the case.

Respectfully submitted this 27th day of June 2019.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
Honorable Steven D. Merryday, Chief United States District Judge
*Pro se* Plaintiff